Field, J.
delivered the opinion of the Court.
The prisoner was indicted and convicted of arson. After the verdict was rendered, a motion was submitted on behalf of the prisoner for a new trial on the ground of a declaration made before her trial by Thomas Graves, one of the jury that tried her cause. In support of the motion, the affidavit of John II. Daniel, was filed. The affidavit of Graves the juror, was also taken and filed; and in connexion with those affidavits, the Court certifies: “ That the said Thomas Graves was called as a juror in the said case, and being sworn on his voir dire, stated that he had not formed an opinion as to the prisoner’s guilt or innocence; and was then peremptorily challenged by the prisoner. That after the persons summoned on the venire who were in attendance, and all the bystanders had been called, and *565 challenged, for cause, or peremptorily, two jurors were still wanting to complete the panel; and the sheriff was directed to go out into the neighbourhood, and summon others for that purpose, when the prisoner by counsel proposed to elect two of those who had been challenged peremptorily, and thus complete the panel; to which the attorney for the Commonwealth assented; and thereupon the prisoner elected the said Graves as one of the two, and he was called and sworn as a juror in the case. Prom the affidavit of John H. Daniel, above referred to, it appeared that after Graves had been peremptorily challenged by the prisoner, and rejected, he went out on the Court green, and accosting the affiant, remarked in rather a warm and excited manner, “ It is well I was rejected, for if I were on the jury, I would send her the other side Boston.” Some short time afterwards, Daniel went into the Court room, and finding Graves on the jury, was surprised at it, and communicated to the counsel of the prisoner what had been said to him by Graves. The trial had then been progressing for some time. Graves, in his affidavit, stated that he had no recollection of having used the expression ascribed to him by Daniel, though he has no doubt that he did so, as it is a common expression of his, and Daniel stales the fact. If he did use the expression, it was without any meaning, and without any warmth or excitement on his part against the prisoner, as he felt none. That when sworn on the jury, he felt no bias or prejudice against the prisoner, and believed he could give her a fair and impartial trial. He had not heard any of the evidence, and had formed no decided opinion; though his impression was, from the rumours he had heard, that if they were true, she was guilty, and ought to be punished. The Court not being advised what judgment to render on the motion for a new trial, adjourned that question to the General Court, as one of novelty and difficulty.
*566 If this objection had been made to the juror before he was sworn, it should have been overruled. It did not appear that the juror had formed a decided opinion on the guilt or innocence of the accused. He had heard the rumours of the country, and concluded that if they were true, the prisoner was guilty. This was certainly a hypothetical opinion; and such as should not disqualify a person from serving on a jury in a criminal case. The case now under consideration resembles the cases heretofore decided in this Court, of Munford Smith v. The Commonwealth, 2 Va. Cas. 6, and Thomas Kennedy v. The Commonwealth, 2 Va. Cas. 510; each of which was much stronger in favour of the prisoner than this case is. Smith had been convicted of murder in the second degree, and sentenced to the penitentiary for 10 years. He had moved for a new trial, on the ground that James Bryan, one of his jury, had, before the trial, expressed himself unfavourably to the prisoner, but of which he was ignorant until after the trial was over. This juror in speaking of the prisoner had said, “ Damn him, he ought to be hung.” The General Court, regarding it not as a deliberate opinion, but such an expression as any unprejudiced mind might hastily make on hearing of the commission of a murder, refused to award a writ of error. Kennedy was a schoolmaster, and had been convicted of a rape committed in his schoolhouse on one of his pupils, a girl about 12 years of age; and sentenced to the penitentiary for 10 years. He also moved for a new trial, because John Embry, one of his jurors, was committed in his opinion before the trial. It appeared from the affidavit of Richard Robinson, that half an hour before the Court sat he heard Embry say, “ That Kennedy was doomed to the penitentiary. That he would go to the penitentiary if even he attempted to commit a rape.” The motion for a new trial was overruled, and this opinion was sustained by the General Court. The General Court *567 thought the opinion expressed by the juror was only an opinion as to what a jury might probably do in such a case, considering the nature of the offence, and the aggravated circumstances under which it had been perpetrated. In the case before us, Graves had sworn that he had formed no opinion for or against the prisoner. He was nevertheless challenged by the prisoner. Now we have often witnessed in criminal trials, when a juror came forward and stated on oath that he had formed no opinion in the case, and he was notwithstanding challenged peremptorily by the prisoner, without cause, and rejected, exhibit in his countenance great embarrassment, confusion and mortification, to the no little amusement of the bystanders. In this state of feeling, they often give way to expressions from the mere impulse of the moment, which, under other circumstances, would indicate hostility, prejudice, or the formation of an opinion against the accused; but which, in reality, have no just foundation to rest upon. Of this character, the expression ascribed to Graves may well be supposed to be ; and as furnishing no good cause for a new trial. A majority of the Court is of opinion, that the motion for a new trial ought to be overruled; which is ordered to be certified.
Duncan, Clopton, and Robertson, J. dissented. Motion for new trial overruled.